■ In the Matter of ALICIA GRAY, Appellant, v RAY CHAM-

BERS et al., Respondents. [614 NYS2d 591] —Mercure, J. Appeal from an order of the Family Court of Tompkins County (Barrett, J.), entered May 20, 1993, which dismissed petitioner's application, in a proceeding pursuant to Family Court Act article 6, for custody of her child.

Petitioner's son, Blaine, was born in November 1989. Respondents, petitioner's stepparents, obtained custody of Blaine pursuant to a May 1990 agreement with petitioner, and in June 1990 a Family Court order was entered "approv[ing]" the parties' agreement. In December 1992 petitioner commenced this proceeding seeking custody of Blaine. After a fact-finding hearing, Family Court denied the petition, essentially because it found that petitioner had failed to establish that she was any more fit a parent than she was when she gave up custody of Blaine. Petitioner appeals.

We reverse. It is fundamental that "[s]o long as the parental rights have not been forfeited by gross misconduct * * * or other behavior evincing utter indifference and irresponsibility * * * the natural parent may not be supplanted" *(Matter of Male Infant L.,* 61 NY2d 420, 427). Thus, "once it is found that the parent is fit, and has neither abandoned, surrendered, nor otherwise forfeited parental rights, the inquiry ends and the natural parent may not be deprived the custody of his or her child" *(supra,* at 427). In this case, there was no abandonment, foster care placement *(cf., Matter of Michael B. [Marvin B.],* 80 NY2d 299), or voluntary surrender to an agency or private individual for adoption. Rather, as in *Matter of Bennett v Jeffreys* (40 NY2d 543, 545), respondents obtained custody of Blaine as the result of an informal, voluntary placement. Significantly, and contrary to Family Court's implicit conclusion, it appears from the record that at the time of the June 1990 placement, no inquiry was made or determination rendered concerning petitioner's fitness. As such, there was no basis for a finding that petitioner was unfit at that time or, for that matter, a benchmark from which to measure any change in her level of fitness.

Under the circumstances, the threshold issue for Family Court's determination was whether petitioner is unfit or whether any other "extraordinary circumstances" exist such as would justify depriving petitioner of custody *(see, Matter of Male Infant L., supra; Matter of Bennett v Jeffreys, supra; Matter of Canabush v Wancewicz,* 193 AD2d 260),* an issue

---

* To the extent that *Matter of Borst v Borst* (137 AD2d 890) holds to the contrary, it is overruled.

upon which respondents had the burden of proof *(see, Matter of Judware v Judware,* 197 AD2d 752; *Matter of Katherine D. v Christine D.,* 187 AD2d 587, *lv denied* 81 NY2d 709). If not, the inquiry is at an end; petitioner is entitled to custody. If, however, respondents fulfilled their burden of establishing the existence of such extraordinary circumstances, then the inquiry turns to the child's best interest *(see, Matter of Bennett v Jeffreys, supra,* at 548). Our review of the record reveals that, because of the failure of the parties and Family Court to recognize the relevant legal standard and to focus on the question of petitioner's absolute (rather than relative) fitness as a parent, insufficient evidence was adduced to permit an informed determination *(see, Matter of Canabush v Wancewicz, supra,* at 263-264). Accordingly, we shall remit the matter to Family Court for a new hearing *(see, supra).* At that hearing, Blaine should be represented by a Law Guardian.

Crew III and Yesawich Jr., JJ., concur.

Peters, J. (concurring). The decision in *Matter of Borst v Borst* (137 AD2d 890), which correctly applied the governing standard on a petition to modify a prior custody order, should not be disturbed. When a party files a petition to modify a *valid* custody order it should be governed by the "best interest of the child under the prevailing circumstances" *(Matter of Borst v Borst, supra,* at 891). So long as the litigants remain the same as those previously before the court, it matters not if they are the biological parents, relatives or biological "strangers" *(Darlene S. v Justino L.,* 141 Misc 2d 303).

Here, however, petitioner contends that there was no permanent custody order. It would seem, from the record before us, that at age 16, threatened with removal of her son by the local Department of Social Services, petitioner appeared before a probation officer and "waived" all of her due process rights including an appearance before Family Court and "agreed" that custody of her son should be with her stepparents. The document she signed, denoted a "Petition and Agreement of Custody (and) (Visitation)", was filed with Family Court seven days later. On the date of filing, Family Court signed an "Order Approving Custody Visitation Agreement" which stated that "the parties having waived their appearance before the Court; it is hereby ORDERED that the Agreement on the reverse side of the Order * * * is hereby approved". The majority describes the agreement as "informal" and "voluntary".

However the "Agreement" may be described, and without reaching the issue of whether petitioner knowingly and volun-

tarily waived her due process rights when she signed the "Agreement", it is clear that Family Court was wholly without authority to sign a custody order without first ensuring that the parties were afforded notice and an opportunity to be heard (see, Matter of Male Infant L., 61 NY2d 420; Sipos v Kelly, 66 AD2d 1022). Hence, the majority appropriately detailed the standard which should govern the remittal of this matter to Family Court.

Mikoll, J. P., concurs. Ordered that the order is reversed, on the law, without costs, and matter remitted to the Family Court of Tompkins County for further proceedings not inconsistent with this Court's decision.